MORSE et al. v. WHEELER et al.

(Supreme Court, Appellate Division, Fourth Department. January 7, 1902.)

1. PRIVATE CANAL—ADJOINING DOCK OWNERS—MUTUAL RIGHTS—INJUNCTION.

Where a contract between abutting owners for the construction of a ship canal provides that an unobstructed right of way in every part of the canal shall be kept open for every vessel entering it to transact business with any of the parties, one of the abutting owners will not be enjoined from mooring a vessel at his dock, where it is discharging grain at his elevator, so as to overlap an adjoining dock, it being larger than his frontage, no harm appearing to be done the adjoining owner, and the custom having obtained for a long period without objection.

2. SAME—REFUSAL—RETAINING CAUSE FOR OTHER RELIEF.

Where an injunction to restrain a dock owner on a private canal from mooring vessels at his dock of such size as to overlap an adjoining dock was denied as inequitable, no harm appearing to have been done to plaintiff, it was discretionary with the court to refuse to retain the cause for the purpose of determining the damages to which plaintiff was entitled for such use of his dock.

Appeal from trial term, Erie county.

Action by David R. Morse and others against Albert J. Wheeler and others to enjoin defendants from using plaintiffs' docks and wharves and for other relief. Judgment dismissing the complaint (66 N. Y. Supp. 714), and plaintiffs appeal. Affirmed.

In 1834 certain parties constructed a private waterway, known as the "Evans Ship Canal," which was designed to furnish communication between the Great Lakes and the Erie Canal at the city of Buffalo, but which for 20 years last past has not been navigable north of Erie street, by reason of a permanent bridge which spans the same at that point. When the ship canal was constructed, and on the 9th day of June, 1834, the then abutting owners, who were the parties interested in its construction, entered into an agreement with respect thereto, whereby, among other things, they bound themselves, their heirs, assigns, and successors, to observe the following conditions, viz.:

"Second. That two-thirds of the whole number of feet on the water line of said canal, and on the water line only, each owner being represented and entitled to vote by and in the proportion of the number of feet of land owned, respectively, on the water line of said canal, wherever they deem advisable, expedient, and proper, may establish, determine, and settle a certain tariff or rates of charges for dockage and wharfage, and may also alter, amend, enlarge, diminish, or discontinue the same, for such a period of time, for such rate to be charged, and within such parts of said canal, as may be deemed expedient by said two-thirds."

"Fifth. That the sum or sums of money which may be raised or accrued from either the wharfage or dockage arranged, as above mentioned, shall be regarded and understood to be appropriated as a fund towards improving, repairing, and maintaining said canal, whenever, in the opinion of said majority, it shall be considered necessary.

"Sixth. That a free, undisturbed, and unobstructed right of way, ingress and egress, through, in, and from all and every part of said canal, shall be allowed and guarantied to each and every of said parties, their heirs and assigns, and every person or persons connected in trade or business with them; provided, however, that said parties, their and each of their heirs and assigns, and every person or persons trading as aforesaid, shall be liable and subject to such tariff or rates of charges for wharfage and dockage as may be established, determined, and settled by said two-thirds, as aforesaid."

The plaintiffs and defendants are the owners of adjoining premises, which are located on the east side of this canal and abut thereon, the defendants' premises being next south of Erie street, while those of the plaintiffs are south of the defendants'; and whatever right, title, or interest the parties have in and to these premises, respectively, was derived from some of the parties to the above-mentioned contract. About 20 years ago a grain elevator was erected upon the plaintiffs' premises, which was called the "Swift Sure Elevator," but for the past 11 years the same has not been in use by either the plaintiffs or their grantors. In 1888 or 1889 another elevator, known as the "Ontario Elevator," was erected upon the defendants' premises, and the same has been used ever since for elevating grain from vessels which have entered Buffalo Harbor from the Great Lakes, and for storing the grain thus elevated until it was ready for shipment to various points in the United States. The vessels in which this grain was brought to the defendants' elevator varied in length from 250 feet to 400 feet, and as the dock frontage of the defendants' premises was but 200 feet, and that of the Swift Sure Elevator but 160 feet, it followed that when vessels were moored to the dock of the former for the purpose of having the grain elevated therefrom they would overlap some portion, if not all, of the plaintiffs' dock. These vessels came to the Ontario Elevator at irregular intervals, and remained there from one to three days, while the process of unloading was in progress. During the seasons of 1898 and 1899 some 27 vessels were moored to the defendants' dock in the manner and for the purposes above mentioned, and while being unloaded each of them overlapped some portion of the plaintiffs' dock, but without in any way interfering with or impeding or preventing the plaintiffs in the use of their dock. This overlapping had occurred ever since the erection of the Ontario Elevator, without objection from the plaintiffs, until the season of 1898, when a formal protest was made on each occasion when a vessel was moored to the defendants' dock. No action was ever taken towards establishing a certain tariff or rate of charges for dockage or wharfage, as contemplated by the provisions of the contract of June 9, 1834, and neither of the defendants has ever collected tolls or charges for the use of the canal or dock in front of the plaintiffs' premises. Upon the trial of the action the plaintiffs' complaint was dismissed, and from the judgment entered thereon this appeal is brought.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Adelbert Moot, for appellants.
Spencer Clinton, for respondents.

ADAMS, P. J.   The plaintiffs in their prayer for relief ask that they be awarded the exclusive right to the use and occupation of the docks and wharves upon their premises, and to control the occupancy of the same or the canal adjacent thereto; that the defendant Albert J. Wheeler and any defendants associated with him account to the plaintiffs for all wharfage, dockage, or rentals collected by him or them for the use of the plaintiffs' docks and wharves, and also for the reasonable tolls, dockage, or wharfage for the use of such docks and wharves by them or either of them; and that they be temporarily and permanently enjoined from using the plaintiffs' premises, docks, or wharves in any manner whatsoever, and from placing, anchoring, or permitting others to place, anchor, or moor, boats and vessels along the side of the same or any part thereof.   From this it will be readily seen that the action is brought upon the equity side of the court, and that the principal relief sought is an injunction, which, if granted, would, from the very nature of things, prevent the defendants from using their elevator for the purpose for which it was constructed, inasmuch as it would be impossible for them to elevate grain from vessels of the ordinary length and size without some portion of such vessels overlapping and lying alongside of the plaintiffs' docks while the process of unloading was in operation.   When, in this connection, it is remembered that the plaintiffs' elevator has remained idle for the past 10 or 11 years, and that its owners have suffered no actual damage by reason of the acts complained of, it is difficult to see how the plaintiffs' contention can prevail without doing violence to the well-settled policy of the law, that relief by injunction should be afforded with great caution, and only in cases where it is made clearly to appear that a party has engaged or is about to engage in the interruption of some right or privilege belonging to or enjoyed by the adverse party, which, upon just and equitable grounds, ought to be prevented.   16 Am. & Eng. Enc. Law (2d Ed.) p. 34.

While the precise question which this case presents does not appear to have been passed upon by the courts of this state, it is one which, under somewhat different circumstances, has arisen and been adjudicated in other states and countries with varying, and not altogether harmonious, results.   In Bainbridge v. Sherlock, 29 Ind. 364, 95 Am. Dec. 644, the supreme court of Indiana has declared that while riparian owners may extend wharves to and into a great navigable highway like the Ohio river, for the accommodation of any particular class of vessels, they must nevertheless possess a sufficient water front to cover that class of vessels without obstructing access to the lands of contiguous proprietors.   In Ranstead v. The William H. Brinsfield, 39 Fed. 215, it was held by the United States district court for the district of Maryland that the owner of a wharf overlapped by a vessel stopping at an adjoining wharf was entitled to compensation for such use.   But in the case of The Hercules, 28 Fed. 475, the district court for the Eastern district of Michigan held that, while under the statutes of that state the owner of a wharf overlapped in this manner had a claim

for wharfage against the overlapping vessel, no such claim existed under the general maritime law. In Delaware River Steamboat Co. v. Burlington & B. Steam Ferry Co., 81 Pa. 103, it appeared that the parties were the owners of rival lines of ferry boats, and owned docks or "slips" contiguous to each other at various places upon the bank of the Delaware river where their respective boats were accustomed to stop, and that when the defendant's boats were moored at its docks they overlapped the plaintiff's docks in such manner as to prevent its boats from going in and out of their slips. In these circumstances it was held that the defendant had the same right of navigation in front of the plaintiff's slips as in any other part of the river, and to moor its own vessels in front of its wharf, but that it had no right willfully to obstruct the plaintiff in the use of its slips; and in Collieries Co. v. Gibb, 5 Ch. Div. 713, it was held by the chancery division of the high court of justice of England that the Thames, being a navigable river, is a public highway, navigable by all her majesty's subjects in a reasonable manner and for a reasonable purpose; that "accordingly a riparian owner has a right to moor a vessel of ordinary size alongside his wharf for the purpose of loading or unloading at reasonable times and for a reasonable time; and the court will restrain by injunction the owner of adjoining premises from interfering with the access of such vessel, even though the vessel may overlap his own premises, though such vessel would not be allowed to interfere with the proper right of access to the neighboring premises if used as a wharf, nor to free entrance to or exit from such premises if used as a dock by other vessels." The decisions in all the cases above cited are apparently founded upon principles of maritime law, with the single exception of the Michigan case, in which the statute of that state was declared operative; and while, as has been intimated, they are conflicting in their conclusions, it seems to us that the principle enunciated in the English case is the proper one to apply to the present case, in view of certain facts to which we shall now refer.

It is not disputed that the Evans Ship Canal was constructed by the owners of premises which abutted upon its banks, and for their express accommodation. In the very first paragraph of the contract entered into by the owners of the canal it is declared "that a free and undisturbed and unobstructed right of way, ingress and egress, through, in, and from any and every part of said canal, shall be kept open, be maintained, and remain so forever, to and for any and every vessel, boat, or craft, rafts of wood or timber, entering or about to enter said canal for the transaction of any business or commerce at or within said canal with any of the said parties, their or each of their heirs, assigns, owners, and occupants, under and by either of the said parties, unavoidable accidents only excepted." And by the sixth paragraph it is further provided: "Sixth. That a free, undisturbed, and unobstructed right of way, ingress and egress, through, in, and from all and every part of said canal, shall be allowed and guarantied to each and every of said parties, their heirs and assigns, and every person or persons connected in trade or business with them.   *   *   *"   In reliance upon

the rights and privileges thus secured to the contracting parties, they or their successors in title proceeded to erect elevators along the banks of the canal, and to operate the same for the purpose for which they were erected.

As we have seen, the frontage owned by at least some of the proprietors was insufficient to admit of the mooring of vessels alongside thereof without overlapping to some extent the docks of adjoining owners, and this was something which was tolerated without objection, until a comparatively recent date, by the very parties who are now seeking to prevent the same by injunction. It seems to us that an interference with a right or privilege which has so long obtained would violate the spirit, if not the very letter, of the contract to which the plaintiffs or their predecessors in title were parties; for it would necessarily deprive the defendants of the use of their elevator, and would, in effect, disturb the free and unobstructed right of ingress and egress in and to every part of the canal for the transaction of business or commerce which such contract secured to them; and, if this be so, the plaintiffs fall far short of satisfying us that the defendants are engaged in the interruption of some right or privilege belonging to or enjoyed by them, "which upon just and equitable grounds ought to be prevented," and our conclusion, therefore, is that the injunctive relief was properly denied.

It is insisted, however, that in no event should the plaintiffs' complaint have been dismissed, but that, on the contrary, the case should have been retained or sent to a jury to ascertain and determine the amount of damages sustained by the plaintiffs in consequence of what counsel is pleased to term a "continuous trespass" upon the part of the defendants, and in this connection our attention is directed to that portion of the complaint in which the plaintiffs waive the alleged torts and wrongs of the defendants, and elect to receive in lieu thereof the reasonable value of the use of their docks, wharves, and premises. In support of this contention, counsel cites a number of cases, all of which were brought to enforce specific performance of a contract. In this class of cases it has been held proper, and such is undoubtedly the settled practice, for courts of equity to retain jurisdiction for the purpose of awarding damages where specific performance is denied in consequence of inability to perform on the part of the vendor by reason of a defect in his title (Haffey v. Lynch, 143 N. Y. 241–247, 38 N. E. 298); but whether in a case like the present one, where the equitable relief is denied, the issue as to damages will be sent to a jury for trial, is a matter resting, in some measure at least, in the discretion of the trial court, and in the peculiar circumstances of this case we are not prepared to say that such discretionary power was improperly exercised. Indeed, we are inclined to the opinion that in view of the contractual relation existing between the parties to this action, and the interdependence which that relation apparently contemplates, and which until a very recent period has existed, in view, also, of the fact that concededly there has been no willful obstruction of the plaintiffs' docks and no unreasonable interference by the defendants

with access thereto or the use thereof by the plaintiffs, the overlapping complained of gives no right of compensation to the owners of the overlapped docks; but, without deciding this question, it is sufficient to say that such damages as the plaintiffs are entitled to, if any, are not substantial enough to give the appellants an absolute right to have the case retained for their assessment.

There is no evidence whatever that the defendants have ever received any tolls or wharfage for the use of the plaintiffs' docks, for which they are liable to account, and, with possibly one exception, it does not appear that it was ever used by the vessels moored to the defendants' dock for any other purpose than to make them fast by a line at the bow or stern, so that grain could be elevated therefrom with the apparatus at the Ontario Elevator. In these circumstances it is difficult to see how any serious damage could possibly have resulted, or why the plaintiffs should, in any event, be entitled to recover more than nominal compensation for the use of their docks; and, if we are correct in our view of this feature of the case, it furnishes a perfect answer to the contention of the plaintiffs' counsel that an injunction should have been granted to prevent a multiplicity of actions for trespass. Our conclusion is that the trial court committed no error in the disposition which was there made of the case, and that the judgment appealed from should therefore be affirmed.

Judgment affirmed, with costs. All concur.